**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONIK CHLAD and ERIC VEHOVC, | ) | |
| | ) | |
| Debtors—Appellants, | ) | |
| | ) | |
| v. | ) | No. 17 C 5198 |
| | ) | |
| MITCHELL CHAPMAN and SEMY | ) | Judge John J. Tharp, Jr. |
| INVESTMENTS LTD., | ) | |
| | ) | |
| Creditors—Appellees. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Monik Chlad and Eric Vehovc (the "debtors") filed a joint petition for relief under Chapter 7 of the Bankruptcy Code ("Code"). In an adversary proceeding in the bankruptcy court, two creditors, Mitchell Chapman and Semy Investments Ltd. (collectively, "Chapman"), objected to the discharge of the debtors' debts, claiming that the debtors omitted certain assets and debts from their required disclosures and misstated other information. Following a bench trial, the bankruptcy court concluded that the errors in the debtors' submissions amounted to false oaths under 11 U.S.C. § 727(a)(4) and denied a discharge. The debtors appeal that ruling,[1] arguing that the bankruptcy judge made numerous factual and legal errors. This Court affirms the denial of discharge.

---

[1] In their notices of appeal, the debtors state that they are appealing from several of the bankruptcy court's orders, including its orders granting Chapman leave to file an amended complaint, denying the debtors' motions to dismiss the adversary complaint, and denying the debtors' discharge. But in their briefs, the debtors assert that the issue on appeal is whether the bankruptcy judge erred in denying their discharge and focus their arguments solely on that issue. As a result, the Court considers only the merits of the bankruptcy court's June 29, 2017 order denying the debtors' discharge and the findings of fact and law that accompany that order.

# BACKGROUND

Chlad and Vehovc are married but have been separated since 2012. Divorce proceedings have been stayed pending their bankruptcy filing in 2013. Chlad holds a degree in finance from the University of Illinois at Chicago and is a licensed real estate broker. Before they separated in 2012, the debtors ran a real-estate company named Lockwood Development, Inc. ("Lockwood"). Chlad is the sole owner of Lockwood, but both she and Vehovc worked for Lockwood and shared responsibility for running the company. Lockwood's business included property management, general contracting, and purchasing real estate for investment or to flip. The debtors also owned several parcels of real estate in their own names. As part of their business—for both Lockwood and their personal interests—the debtors purchased and sold real estate, researched real property records, prepared loan documents and deeds, and maintained a ledger of business transactions.

The debtors filed a joint petition for Chapter 7 bankruptcy on October 14, 2013, seeking to discharge close to $5 million in secured and unsecured debt. In connection with their petition, the debtors also filed their required schedules and Statement of Financial Affairs ("SOFA"). *See* 11 U.S.C. § 521(a)(1)(B). In 2015, Chapman filed an adversary complaint objecting to the discharge of the debtors' obligations. He alleged, and the bankruptcy court later concluded, that there were seven categories of false oaths in the debtors' petition, schedules, and SOFA.

The first false oath was an omission of real estate in Schedule A, which required the debtors to list "all real property in which the debtor has any legal, equitable, or future interest." R. 1223.[2]

---

[2] Because the debtors failed to paginate their appendices (*see infra* at 5-8), the Court cites only to Chapman's appendix. All citations to that appendix are denoted as "R." followed by the appendix page number.

Although the debtors listed their interest in several properties, they failed to disclose that they jointly owned real estate located at 3928 West Van Buren Street (the "Van Buren Property").[3]

The second false oath concerned the debtors' failure to identify all creditors in their schedules. Prior to the petition date, Lockwood had executed a promissory note in favor of Edgebrook Bank ("Edgebrook") in the amount of $812,000. The note was secured by a mortgage on a property located at the intersection of St. Louis Avenue and Flournoy Street (the "Flournoy Property"). Although Lockwood executed the note, the debtors both executed a commercial guarantee on the note; that is, they personally guaranteed the note's repayment. The debtors failed to disclose either the guarantee or that Edgebrook was a creditor.

The third and fourth omissions found to be false oaths are related. The debtors omitted two bank accounts in Schedule D, as well as failed to disclose transfers made to others using those accounts in response to Questions 7 and/or 10(a) in their SOFA. The first account was one Chlad owned jointly with her mother, Jadwiga Chlad (the "Jadwiga Account"). Chlad deposited funds into the account and her mother, who lived in Poland, drew on the account from ATMs using her debit card. In the two years leading up to the filing of the petition, Chlad transferred $2,648 to her mother in this manner. The second account was one Chlad owned jointly with Mariusz Furca, a subcontractor who worked for Lockwood (the "Furca Account"). Much like the account with her mother, Chlad used the account to transfer payments to Furca by depositing funds into the account and allowing Furca to draw on the account using his own debit card. Through this process, Chlad transferred $21,339 to Furca in the two years prior to the petition date.

---

[3] The debtors also incorrectly listed an $80,000 debt that was secured by the Van Buren Property as being secured by another property.

Chapman's objection also rested on the failure to schedule a shareholder loan Chlad had received from Lockwood. According to Lockwood's 2010 tax return, Chlad owed Lockwood around $1.2 million. The entity's 2012 tax filing shows that the shareholder loan was paid down to around $51,00 by December 31, 2012. Then, as reflected on Lockwood's tax return for 2013—the year the debtors filed for bankruptcy—the loan was reduced from $51,000 at the beginning of the year to zero at the end of that year. As noted above, the debtors' schedules required them to identify all creditors. Moreover, Question 3(c) in the SOFA calls for debtors to "[l]ist all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders." R.1245. The debtors neither disclosed Lockwood as a creditor or any transfers to Lockwood in the year prior to the petition date. According to the bankruptcy court, "[e]ither the shareholder loan existed as of the Petition Date and the Schedules are false, or Chlad repaid the loan prior to the Petition Date and the Statement of Financial Affairs is false." *In re Chlad*, Adv. No. 15 AP 289, 2017 WL 2861104, at *7 (Bankr. N.D. Ill. June 29, 2017).

The sixth false oath stems from misstatements about the sources of income the debtors had received prior to filing for bankruptcy. Vehovc reported that he earned $15,500 in 2012 but attributed all of that income to his employment with American Enterprise Bank, a company he worked for at the time of the petition. In reality, Vehovc earned much of that income from Lockwood, as he did not leave Lockwood and begin working for the bank until late 2012. Chlad, for her part, failed to disclose in response to Question 2 of the SOFA that she received income from sources other than Lockwood. In particular, she omitted that she received $2,750 per month

in rental income and that she received (from Vehovc) $1,700 per month in alimony, maintenance and support payments.[4]

The seventh and final false oath was an omission in the debtors' petition of an alias Chlad used. Chlad identified herself only as "Monik"—her given name—but omitted that she also goes by "Monika." Chlad regularly used the name Monika in her business and financial affairs prior to filing for bankruptcy, including on bank accounts and in filing her personal tax returns.

The bankruptcy court held a bench trial between November 28 and December 2, 2016. The debtors testified and offered explanations for each omission and misstatement, which are discussed below. The debtors' bankruptcy attorney, Peter Nabhani, also testified on his clients' behalf. Nabhani testified that several of the errors were his fault; the debtors had disclosed much of the omitted information to him, but he failed to incorporate that information into their filings. Finally, the court heard testimony from the debtors' tax preparers, Chlad's personal assistant, and a representative from Edgebrook who had knowledge of the debtors' personal guarantees.

Following trial, the bankruptcy court entered judgment in Chapman's favor and denied debtors a discharge under 11 U.S.C. § 727(a)(4). The court determined that the above errors were false statements made under oath, that the debtors knew or should have known they were false, and that the errors were material to the bankruptcy case. Moreover, the court concluded that, taken together, the errors demonstrated a reckless disregard for the truth, which was sufficient to support a finding of fraudulent intent under the statute. This appeal followed. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

---

[4] The debtors disclosed those amounts in Schedule I, but not in their SOFA.

## DISCUSSION

### I. Violations of Appellate Rules

Before addressing the merits of the appeal, Chapman argues that summary affirmance is warranted based on the debtors' failure to comply with several procedural rules. Chapman Br. 16-17, ECF No. 58. The most serious violation is their initial failure to file an appendix, as required by Federal Rule of Bankruptcy Procedure 8018(b). Both debtors also failed to include a statement of the case, Chlad omitted certain cases from her table of authorities, and Vehovc omitted a required certification concerning the length of his brief. *See* Fed. R. Bankr. P. 8014(a)(3), (6), (10). Chapman contends that those errors are so egregious that the Court should not reach the merits of this appeal. Although, for the reasons set forth immediately below, the Court declines to dismiss this appeal based on those errors, it is disappointing to find that, in an appeal in which the fundamental question is whether the debtors' myriad errors and omissions in completing required schedules warrant a finding of reckless disregard, the debtors and their counsel failed to comply with fundamental procedural rules governing the appeal. In the context of an appeal like this one, one might expect to see hyper-vigilance to ensure that all required information was supplied to the court, but instead the debtors' submissions present a host of problems that suggest, at best, continued inattentiveness and carelessness.

A district court has the authority to summarily affirm a bankruptcy court's judgment as a sanction for serious non-jurisdictional, procedural defects. *See Telesphere Commc'ns, Inc. v. 900 Unlimited, Inc.*, 177 F.3d 612, 616-17 (7th Cir. 1999) (affirming summary dismissal of bankruptcy appeal where counsel failed to timely file appellate brief); *In re Bulic*, 997 F.2d 299, 301-03 (7th Cir. 1993) (upholding dismissal of bankruptcy appeal for failure to designate record within required deadline); *In re Morrissey*, 349 F.3d 1187, 1189-91 (9th Cir. 2003) (upholding summary dismissal by district court where "gross procedural defects" in briefing "made review impossible").

And that power almost assuredly extends to instances where appellants fail to file an appendix. *See Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 690 (7th Cir. 2018) (entering summary affirmance as sanction where appellant failed to comply with circuit rule governing appendices that is analogous to Bankruptcy Rule 8018); *Hill v. Porter Mem'l Hosp.*, 90 F.3d 220, 226 (7th Cir. 1996) ("For more than 35 years, this court has declined to entertain appeals when the appellant does not file a required appendix.") (citation omitted).

In exercising their authority, federal courts have approached summary dismissal of bankruptcy appeals in three ways. *Bulic*, 997 F.2d at 301-02. Some courts have relied on their inherent authority and looked at whether the procedural misstep was in bad faith or prejudiced the opposing party. *Id.* at 301. Others have applied Bankruptcy Rule 8003(a)(2), which gives a district court authority to take any appropriate steps, including dismissal of an appeal, in response to non-jurisdictional procedural lapses. *Id.* at 301-02.[5] And other courts have invoked Bankruptcy Rule 9006(b), which looks at whether the "failure to act was the result of excusable neglect." *Id.* at 302. The debtors' errors do not warrant the harsh sanction Chapman seeks under any of these rubrics.

Whether a litigant's failure to timely follow procedural rules was the product of excusable neglect is a fact-based inquiry that looks at (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on the proceedings, (3) the reason for the delay, including whether it was within the control of the party seeking a reprieve, and (4) whether that party acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Court acknowledges that some of these factors weigh in Chapman's favor. There is no question that the debtors' miscues were entirely within their control. Counsel for both debtors

---

[5] At the time of the Seventh Circuit's decision in *Bulic*, this provision was incorporated in Rule 8001(a). *Compare Bulic*, 997 F.2d at 301 n.2 *with* Fed. R. Bankr. P 8003(a)(2) (West 2018).

concede that their initial failure to file an appendix and include the other items was due to their inattention. Chlad Mot. for Leave to File App. 4, ECF No. 61; Vehovc Reply 2, ECF No. 74. Their indifference to the rules also impacted Chapman. Chapman did not have the benefit of an appendix when he filed his response and was at times forced to guess what part of the record the debtors referenced in their opening briefs. That said, the errors otherwise had minimal impact on this proceeding. After Chapman raised the issue in his response, the debtors filed an appendix and addressed their other deficiencies. And although they filed numerous updates and corrections to square away those defects, they ultimately provided the Court with serviceable versions of their briefs and appendices. Moreover, the Court concludes that none of the procedural errors was a product of bad faith. Their appeal is by no means frivolous and they promptly (albeit clumsily) acted to correct their appendices and other issues once raised. On balance, the Court finds that counsels' neglect was excusable and does not warrant summary dismissal. *See Lynn v. Pry*, No. 4:15-cv-00029-TWP-TAB, 2015 WL 7096637, at \*4-6 (S.D. Ind. Nov. 13, 2015) (declining to dismiss appeal where attorney's numerous missteps appear to have been the result of inexperience rather than bad faith or intent to delay).

Nor would the outcome change if the Court applied one of the other two standards. Both inquiries focus on prejudice and bad faith, *Bulic*, 997 F.2d at 301-02, which, as discussed above, do not favor dismissal. Given as well that the Court was able to address the procedural defects using far less drastic measures—by ordering the parties to correct the issues—summary dismissal in this instance would be overkill. *See Lynn*, 2015 WL 7096637, at \*6 (declining to dismiss appeal in part because alternatives to dismissal were available under the circumstances). Accordingly, the Court declines to dismiss the appeal on procedural grounds and continues to the merits.

## II.     False Oath Denial of Discharge

An oft-repeated phrase in bankruptcy is that discharge "is reserved for the honest but unfortunate debtor." *In re Kempff*, 847 F.3d 444, 447 (7th Cir. 2017) (internal quotation marks and citation omitted). This adage is enforced through Section 727(a) of the Code, which "den[ies] the privilege of discharge to dishonest debtors." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). The statute provides twelve grounds for denying a discharge, but only one of those grounds is relevant here. A debtor is ineligible for a discharge where "the debtor knowingly and fraudulently" makes "a false oath or account" in connection with their bankruptcy case. 11 U.S.C. § 727(a)(4)(A). The fundamental purpose of this provision "is to [e]nsure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). To prevail on a false oath claim, a party opposing a discharge must show, by a preponderance of the evidence, that: (1) the debtor made a statement under oath, (2) the statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement was material to the bankruptcy proceeding. *Kempff*, 847 F.3d at 449. "In bankruptcy, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Stamat*, 635 F.3d at 978 (internal quotation marks and citation omitted).

A district court reviews a bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *Lardas v. Grcic*, 847 F.3d 561, 569 (7th Cir. 2017). "A factual finding is clearly erroneous if 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Kempff*, 847 F.3d at 448 (citing *Kovac v. United States*, 614 F.3d 666, 672 (7th Cir. 2010)). That said, "[i]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its

entirety," this Court may not reverse factual findings even if it "would have weighed the evidence differently." *Stamat*, 635 F.3d at 979. For determinations that involve mixed questions of law and fact, as discussed more fully below, a mixed standard of review applies. *U.S. Bank Nat'l Assoc. v. Village at Lakeside LLC*, 138 S. Ct. 960, 967 (2018).

In denying the debtors a discharge, the bankruptcy court examined seven categories of false oaths relating to (1) the Van Buren Property, (2) the Edgebrook guarantees, (3) the Jadwiga and Furca Accounts, (4) transfers made using those two accounts, (5) the source of the debtors' income, (6) the shareholder loan, and (7) Chlad's "Monika" alias. It found that Chapman proved by a preponderance of the evidence that the debtors knew or should have known that those errors were false, that each error was material, and that the cumulative effect of the false oaths established a pattern of reckless indifference to the truth. The Court examines those conclusions in turn.

A.    **False Statements or Omissions Under Oath**

The bankruptcy court properly concluded that each of the omissions and misstatements satisfied the first two elements of § 727(a)(4)(A). The errors are found in either the debtors' petition, schedules, or SOFA, so there is no dispute they were made under oath. *See New Century Bank, N.A. v. Carmell*, 424 B.R. 401, 418 (Bankr. N.D. Ill. 2010) (noting that debtors sign such filings under penalty of perjury); *Retz*, 606 F.3d at 1197 (stating errors in schedules and SOFA can qualify as false oaths). The falsity of the errors is mostly undisputed as well. Chlad challenges only that the omission of the Edgebrook guarantees and the Furca account were, in fact, omissions.

As to the Edgebrook guarantees, Chlad argues that she and Vehovc need not have scheduled Edgebrook as a creditor because the bank gave them assurances that their guarantees

were no longer in effect. Chlad Br. 20-23, ECF No. 44.[6] The bankruptcy court rejected this argument, finding that the bank's oral promise did not obviate the need to disclose the guarantees. The Court agrees with the bankruptcy judge.

The guarantees executed by the debtors in favor of Edgebrook state that they "will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full." R. 606-07, 1259, 1263. They go on to state that Edgebrook "shall not be deemed to have waived any rights under this Guaranty unless such wavier is given in writing and signed by [Edgebrook]." R. 1261, 1265. In other words, the debtors were liable on the debt until Lockwood's obligation was paid in full or Edgebrook released the debtors from their guarantees in writing. Neither of those events occurred prior to the petition date. The underlying debt was not paid off until ten months after the petition date.[7] And although the debtors were told prior to filing their schedules that they need not worry about the guarantee and that Edgebrook representatives were working to find someone else to assume the debt, Edgebrook never provided debtors with a written release. R. 612-14. Given the plain language of their agreements, the Court concludes that the bankruptcy judge's finding that the debtors were obligated to report in their schedules that they had personally guaranteed to Edgebrook the repayment of an $812,000 loan was not clearly erroneous.

Chlad also suggests that she need not have scheduled the Furca account. Chlad Br. 31-34. She is incorrect. Schedule B requires debtors to "list all personal property of the debtor of whatever

---

[6] Because there are errors in the pagination of both Chlad's opening brief (ECF No. 44) and Vehovc's amended brief (ECF No. 73), the Court cites to the ECF page numbers when referencing those briefs.

[7] The sale price for the Flournoy Property was slightly less than the outstanding loan balance, resulting in a deficiency. R. 946. The deficiency is of no consequence here, though.

kind," including, "[c]hecking, savings, and other financial accounts." R. 1224. The record supports the conclusion that the account belonged to Chlad, at least in part. The account was opened in both her and Furca's name and Chlad had the statements directed to her personal address. R. 674-76. Chlad counters that the account belonged to Lockwood, not her, because it contained only Lockwood funds and was used only for Lockwood purposes. Chlad Br. 31; Chlad Reply 12, ECF No. 75. But she cites no authority to support her position that the use of the funds dictates ownership of the account. Nor does framing the issue as one of fact, as Chlad does, alter the outcome. Given that the account was in Chlad's own name, there was more than enough reason to find that it belonged to her. Thus, this finding also cannot be considered clearly erroneous.

## B. Materiality

Skipping to the fifth element, the debtors challenge the finding that their errors were material to the bankruptcy. Materiality is construed broadly for purposes of the Code's discharge provisions. *Lardas*, 847 F.3d at 570. A misstatement or omission is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Stamat*, 635 F.3d at 982. The bankruptcy judge found each false statement and omission to be material: the Van Buren Property was part of the debtors' estate; the Edgebrook guarantees, the shareholder loan, and income issues relate to their business dealings; and the two accounts, the transfers from those accounts, and Chlad's alias concern both the their business dealings and the disposition of their property. *Chlad*, 2017 WL 2861104, at *10-14. Chlad attacks those findings on three fronts, but her challenges are unavailing.[8]

---

[8] Vehovc's brief fails to develop any specific materiality argument, merely asserting without further elaboration that none of the alleged false statements and omissions sufficed to "create an erroneous impression." Vehovc Am. Br. 27. This conclusory and undeveloped

First, she contends that the omitted assets—namely, the Van Buren Property and the two bank accounts—are immaterial because they were practically worthless as of the petition date. Chlad Br. 16, 31-33. The Van Buren Property was fully encumbered while the two accounts held less than $40 combined. R. 776-77, 1507, 1568. The bankruptcy court considered and rejected this argument, and for good reason. Several appellate courts have refused to accept that an asset is immaterial simply because it "concerned a worthless business relationship or holding." *Id.* (quoting *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)); *see also In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). The debtors counter that notwithstanding the broad language in *Stamat* and other cases, bankruptcy courts in this circuit have found an undisclosed asset or holding to be immaterial where it was *de miminis*. *See, e.g.*, *In re Granrath*, 560 B.R. 515, 530 (Bankr. N.D. Ill. 2016) (omissions of bank account and transfers were *de minimis* compared to $4.5 million in assets debtor disclosed and thus immaterial); *In re Bonomi*, Adv. No. 13 AP 119, 2014 WL 640982, at *17-19 (Bankr. N.D. Ill. Feb. 14, 2014) (failure to report income from businesses was immaterial where businesses "were either legally defunct or generating no or *de minimus* income").

This Court cannot follow those decisions. The Seventh Circuit has made clear that "Debtors have an absolute duty to report whatever interest they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) (citations omitted); *see also In re Varan*, No. 11 B 44072, 2014 WL 2881162, at *7 (Bankr. N.D. Ill. June 24, 2014) ("Disclosure is mandatory even if a debtor believes an asset to

---

contention is inadequate to preserve a challenge to materiality. *See, e.g.*, *Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017) ("But Ewell fails to develop this argument on appeal, and we have repeatedly noted that perfunctory and undeveloped arguments do not preserve a claim for our appellate review.") (citations omitted); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

be worthless or unavailable to the bankruptcy estate."). In any event, the debtors ignore that the two accounts are material for an entirely separate reason: they "shed light on the debtors' financial history." *Chlad*, 2017 WL 2861104, at *12; *see also* 6 *Colliers on Bankruptcy* ¶ 727.04[1][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018) ("Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditor's ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition."). The debtors offer no meaningful counter to this aspect of materiality.

Chlad also challenges the materiality of the Edgebrook guarantees and her alias. Her argument as to Edgebrook is perfunctory at best. After discussing at length why she need not have disclosed the creditor relationship or, alternatively, why the omission was an innocent mistake (more on that below), she asserts without further analysis that the oversight was immaterial. Chlad Br. 20-23. There is, in any event, little doubt that the Edgebrook guarantees were material. "A bankruptcy proceeding can't be concluded without knowledge of who the debtor's creditors are, unless omitting to mention them would be immaterial . . . , which it would be only if the amount owed them was utterly trivial." *In re Katsman*, 771 F.3d 1048, 1051 (7th Cir. 2014) (citations omitted). The debtors cannot seriously claim their guarantees—which totaled over $800,000—fall into this category. The Court also has no trouble reaching the same conclusion as to Chlad's alias. The discrepancy easily could have affected the discovery of her assets or income. Chlad held several accounts under the name "Monika" (including the undisclosed Jadwiga and Furca Accounts) and it is not readily apparent that "Monika" and "Monik" are derivations of the same name. While it is true that Chlad turned over the statements to these accounts to the trustee, she did so only after the trustee requested statements for any account in her own name. R. 966-67,

1049. Had the trustee been forced to run his own search, there is a significant risk that he would not have discovered them.

Finally, Chlad also suggests that some of the other errors were immaterial because they did not alter the outcome of the bankruptcy case. Chlad Br. 25. This argument lacks force as well. The Seventh Circuit rejected a similar line of reasoning in *Katsman*. The debtor there contended that her omission of certain creditors from Schedule F was harmless because her debts would still have been discharged had she listed them. 771 F.3d at 1050. The appellate court found that "such an argument if accepted would mean that a no-asset debtor wouldn't have to so much as submit a Schedule F, because the creditors he would list on it could recover nothing from the estate in bankruptcy—there would be no estate." *Id.*; *see also Lardas*, 847 F.3d at 570 (rejecting debtor's argument that errors were immaterial "because they worked neither to his benefit nor to the detriment of any creditor"). At any rate, the Court of Appeals has reiterated several times that the "successful function of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Stamat*, 635 F.3d at 983 (quoting *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 496 (7th Cir. 2007)). Thus, given that the account transfers, shareholder loan, and income issues relate to the debtors' business dealings and/or the disposition of their property, the Court cannot say those errors were immaterial.

C.     **Knowingly and Fraudulently**

That leaves the most substantial issue on appeal: whether the debtors' misstatements were knowing and fraudulent. Although the knowing and fraudulent requirements are often discussed in tandem, the two are distinct elements. The Court therefore will address them separately.

1.      **Knowingly**

The Court begins with the knowing half of the equation. The standard for determining when a misstatement is "knowing" is ill-defined at best and, as a result, is subject to dispute here. The bankruptcy court held, without citing any authority, that debtors satisfy this element if they knew or should have known that their misstatements were false. *Chlad*, 2017 WL 2861104, at *10. The debtors contend that the false oath provision requires that they have actual knowledge that they omitted or misstated information at the time they signed their disclosures.[9] Chapman rejoins that Seventh Circuit precedent supports the standard applied by the bankruptcy judge. Chapman Br. 38. Both arguments are off base.

At the outset, the Court fails to see how a "should have known" standard comports with the language of § 727(a)(4)(a), which explicitly calls for a debtor to "knowingly" make a false oath. Chapman contends that *Stamat* embraces a lower standard, but the Court does not share his view. It is true that the Seventh Circuit in that case remarked that the debtors "made numerous false oaths that they knew *or should have known* were inaccurate." *Stamat*, 635 F.3d at 979 (emphasis added). But that statement is set forth in a recitation of what the bankruptcy court concluded; it does not, in this Court's view, amount to an endorsement of that standard by the appellate court. Indeed, nowhere else in the opinion does the Seventh Circuit even discuss the knowing requirement.

---

[9] Chlad's position on this issue is inconsistent at best. In the section of her opening brief titled "Elements of a § 727(a)(4)(a) Claim," she states that a "should have known" standard applies. Chlad Br. 11. But then, in the substantive portion for her brief, she advocates for an actual knowledge standard. *See, e.g.*, *id.* at 18-19. Vehovc, however, was clear about this position: "Whether a party should have known that a statement was false does not equate to knowing that it was." Vehovc Am. Br. 37.

Nor can the Court follow the debtors' take on the knowing element. Citing *In re Merena*, they argue that "knowingly" requires that the debtor "acted deliberately and consciously." 413 B.R. 792, 815-16 (D. Mont. 2009). Although this definition hews more closely to the language of the statute, it begs the question: In what way must a debtor act deliberately and consciously? Chlad answers by asserting that the debtor must deliberately fail to make the required disclosures. Chlad Reply 15. Put differently, in Chlad's view, the knowing element is not about whether the debtor knows the "truth" of the information withheld or misstated (*e.g.*, that Chlad and Vehovc owned the Van Buren Property) but whether she knows the information was omitted or misstated at the time she signed the petition. But this definition of knowingly bleeds into fraudulent intent; in effect, Chlad commits the very error she cautions against, namely conflating the knowing and fraudulent elements. The knowledge element speaks to an awareness that a statement is false or misleading, whereas intent speaks to the purpose vel non of the false or misleading statement. It is in the latter inquiry that an assessment of whether a debtor was aware that the false statement had been made belongs; the former turns on whether the debtor has an "awareness of his own interest in, or claim to, an asset material to the bankruptcy process, or [has] actual knowledge of the occurrence of a past event or condition in his financial history that is to be disclosed." *In re Radloff*, 418 B.R. 316, 322 (Bankr. D. Minn. 2009).[10]

---

[10] *Radloff* actually looked at two factors in analyzing the knowledge element, the second of which "is the debtor's understanding that he was required to disclose the specific points of information on his statements and schedules." *Id.* The Court does not address the second factor here, however, because the Seventh Circuit has indicated that it touches on the fraudulent intent analysis. *See Kempff*, 847 F.3d at 449-50 (upholding finding of no fraudulent intent where debtor wrongly omitted divorce settlement based on belief that it was worthless); *Katsman*, 771 F.3d at 1050 (holding that debtors' failure to seek advice of counsel regarding whether to list certain creditors "bespoke a reckless indifference to truth").

With this understanding of the knowing requirement, the Court concludes that the bankruptcy court erred in applying a "should have known" standard in analyzing the debtors' misstatements. Nevertheless, the error does not warrant reversal. That is because the bankruptcy court need not have qualified its findings; the evidence at trial clearly supports that the debtors *knew* the truth about the information they misstated in the sense defined above. There is no real dispute that the debtors knew they owned the Van Buren Property and had executed personal guarantees with Edgebrook; knew that Chlad owned and utilized the two bank accounts and an alternative first name in her financial and business dealings; and knew about the sources of their various incomes. *See* Chlad Br. 25; Vehovc Am. Br. 16;[11] Chlad Reply 15-16. And while the debtors dispute that they knew about the shareholder loan, there is evidence in the record to the contrary. Chlad reviewed and signed Lockwood's tax returns for 2010, 2011, and 2012, all of which detailed the loan. R. 649-55, 1392, 1042, 1412. Lockwood's tax preparer also stated that she believed she had discussed the loan with Chlad as well (though Chlad disputes she ever discussed the issue with an accountant). R. 645, 881. Vehovc testified that he also was involved in preparing Lockwood's 2010 and 2011 tax returns. R. 1107, 1109. Moreover, he testified that he did not discuss the shareholder loan with Nabhani, the debtors' bankruptcy counsel, because he

---

[11] Vehovc argues that while he and Chlad filed a joint petition, he must be judged separately from his wife in determining whether a denial of discharge is warranted. Vehovc Am. Br. 23. In other words, Chlad's failure to disclose certain information should not be imputed onto him, given that he was "focused on his own information" and did not "realize that Chlad's information may have been incorrect as well." *Id.* Although Vehovc is correct that Chapman must establish all of the elements of 11 U.S.C. § 727(a)(4)(A) against both debtors, *see In re Yonkers*, 219 B.R. 227, 233 (Bankr. N.D. Ill. 1997) (stating that "[a] spouse's failure to disclose will not be automatically imputed to the other spouse because each has an independent duty to disclose all of his or her assets and liabilities" in holding that debtor husband, but not wife, had satisfied certain elements under statute), his argument is meritless. Vehovc signed off that all of the information in the petition, schedules and SOFA was accurate, R. 1221-22, 1251, so his claim that he was focused only on his own information is, at best, irrelevant and, at worst, a further admission of recklessness: attesting to the accuracy of information he failed to review.

thought the loan was merely "an accounting entry" and not "a material thing." R. 1119-20. Implicit in this testimony is that Vehovc knew about the shareholder loan but did not believe it needed to be disclosed.[12] Therefore, the bankruptcy court did not err in holding that the fourth element was satisfied as to each misstatement and omission.

### 2. Fraudulently

The other half of the scienter equation, fraudulent intent, addresses the question of why the false statement or omission occurred. Fraudulent intent is established in one of two ways: when a debtor either knowingly intends to defraud or engages in behavior that evinces a reckless disregard for the truth. *Kempff*, 847 F.3d at 449; *Yonikus*, 974 F.2d at 905. "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (citations omitted); *see also Katsman*, 771 F.3d at 1050 (adding that the fraudulent "need not connote intending to obtain a pecuniary benefit"). Reckless disregard for the truth, on the other hand, refers to "not caring whether some representation is true or false." *Chavin*, 150 F.3d at 728 (explaining that "reckless disregard" is "the equivalent of knowing that a representation is false and material") (citations omitted). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statement which he has made under oath." *In re Tully*, 818 F.2d 106, 111 (1st Cir. 1987). That said, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See Kempff*, 847 F.3d at 449 (affirming

---

[12] The debtors also challenge the notion that they knew the loan was paid off in 2013 because Lockwood's tax return for that year was not completed until after the petition date. Chlad Br. 26-29; Vehvoc Am. Br. 13 n.2. But this argument does not get the debtors very far. If the most up-to-date financial documentation the debtors had at the time of the petition was Lockwood's 2012 tax return, as they contend, then the information they had available reflected that Lockwood was a creditor and thus needed to be disclosed on their schedules.

discharge where debtors errors were product of innocent mistakes). Because intent is a state of mind rarely amenable to direct proof, fraudulent intent may be inferred from the debtor's "course of conduct" or the "surrounding circumstances." *Yonikus*, 974 F.2d at 905-06 (citations omitted). In the same vein, a pattern or series of false statements may be used to establish a reckless disregard for the truth. *Stamat*, 635 F.3d at 982 ("[T]he cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent . . . .") (quoting *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009)).

The bankruptcy court concluded that there was a pattern of misstatements and omissions in this case that evidenced a reckless disregard for the truth. The debtors attack this conclusion in several ways, the first of which is by urging this Court to review the fraudulent intent finding *de novo* and reweigh the evidence in their favor. According to the debtors, there is no factual dispute concerning their errors; rather, the only issue is whether the inferences drawn from the undisputed facts sufficiently demonstrates a reckless disregard for the truth. In other words, they suggest that the fraudulent intent inquiry here is a mixed question of law and fact that warrants plenary review.

The Court cannot agree. The Seventh Circuit has stated unequivocally that fraudulent intent is a question of fact. *Kempff*, 847 F.3d at 449 ("Whether a debtor possessed the requisite intent to defraud is a question of fact . . . .") (quoting *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015)); *Stamat,* 635 F.3d at 982 (holding evidence of series of omissions "shows a reckless disregard sufficient for the bankruptcy court's finding of intent under section 727(a)(4), and we do not disturb that finding"); *Yonikus*, 974 F.2d at 906 ("We find that the bankruptcy court was not clearly erroneous in concluding that Yonikus knowingly and fraudulently failed to report the personal injury proceeds."). And that is inherently so because an "intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility." *Kempff*, 847 F.3d at 449;

*see also Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987) (stating that the "determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor").

The debtors try to sidestep this roadblock by arguing that the bankruptcy judge never made any credibility determinations (save one in their favor) about the explanations they offered. And because the Court failed to do so, the debtors continue, this Court must accept those explanations as true. Chlad Br. 1-2; Vehovc Am. Br. 7-8. But the debtors misread the bankruptcy court's opinion. As an initial matter, their reading simply ignores the fact that, while stopping short of expressly finding they testified falsely, the bankruptcy judge found significant reason to question the testimony of both debtors concerning the omission of the Van Buren Property. *See Chlad*, 2017 WL 2861104, at *11 (testimony of bankruptcy attorney that debtors reviewed Schedules page by page with him before signing "casts doubt on their testimony that the omission of the Van Buren Property . . . was inadvertent"); *id.* at *15 (attorney's testimony "tends to suggest that" omission of the debtors' interests in the Van Buren Property "was not inadvertent but was intentional and fraudulent"). That conclusion alone is sufficient to justify the bankruptcy court's denial of discharge. Moreover, the bankruptcy court's assessment of the debtors' credibility necessarily informed its judgment that the debtors had been indifferent to the accuracy of their post-petition documents, whether or not the judge made explicit findings about the credibility of every explanation the debtors offered. *Cf. In re Gilliam*, Adv. No. RS 09-01091-CB, 2012 WL 1191854, at *11 (B.A.P. 9th Cir. Apr. 6, 2012) ("While the bankruptcy court did not expressly state that Gilliam's testimony was credible, that finding was subsumed within the court's finding that Gilliam did not have a fraudulent intent to the extent his bankruptcy disclosures contained any errors or omissions.").

The debtors also ignore that the bankruptcy court nonetheless considered and flatly rejected their explanations. Putting aside the judge's skepticism of the debtors' testimony about the Van Buren Property, he refused to allow the debtors to shift the blame to their counsel for that omission, stating that "the Debtors are not exempted from their responsibility of reviewing documentation prepared by their attorneys that they later sign under oath and submit to the Court." *Chlad*, 2017 WL 2861104, at *11. The debtors' explanation for failing to schedule the Edgebrook guarantees also fell by the wayside: "the Debtors' belief that Edgebrook Bank would not seek to enforce the guarantees does not excuse the Debtors from disclosing those obligations." *Id.* at 15. And, at bottom, the bankruptcy court refused to accept that any of the misstatements were inadvertent, given the debtor's background, sophistication, and the fact that they sought the advice of experienced counsel. *Id.* (citing *Stamat*, 635 F.3d at 982).

But even if the fraudulent intent determination here were a mixed question of law and fact, the debtor's argument would still fall flat. In *Village at Lakeside*, the Supreme Court recently addressed the appropriate standard of review for mixed questions. 138 S. Ct. at 963. The Court held that the standard of review turns on whether answering the question "entails primarily legal or factual work." *Id.* at 967. When a mixed question requires a court "to expound on the law, particularly by amplifying or elaborating on a broad legal standard," *de novo* review is appropriate. *Id*. But when questions "immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address . . . 'multifarious, fleeting, special, narrow facts that utterly resist generalization,'" then clear error governs. *Id.* In applying this distinction, the Court ruled that the application of historical facts to the Ninth Circuit's legal test for determining a "statutory insider" under 11 U.S.C. § 101(31) was "as factual sounding as any mixed question gets," and required review for clear error.

The same is true here. At a high level, the bankruptcy court needed to determine whether the facts presented at trial sufficiently established the debtors' intent. From this view, the inquiry is inherently factual; assessing a state of mind is an issue that utterly resists generalization. The debtors counter that the bankruptcy court never held that they had a specific intent or motive to defraud, but rather that their series of omissions evidenced a pattern of reckless conduct. Chlad Reply 1. But even on this score, the inquiry requires primarily factual work. Whether a series of omissions amounts to reckless indifference to the truth requires a balancing of the facts surrounding the omissions, as well as the debtors' explanations and awareness. The analysis does not require much legal legwork. As far as this Court is aware, the Seventh Circuit has never tried to elaborate on the definition of "pattern" in denial of discharge cases. *See, e.g.*, *Stamat*, 635 F.3d at 982; *Katsman*, 771 F.3d at 1050. Nor have the debtors pointed to any district or bankruptcy courts decisions that have attempted to do so. *Cf. In re Carney*, 558 B.R. 250, 260 (Bankr. N.D. Ill. 2016) (describing line between inadvertence and reckless disregard as "fine and elusive"). Further, contrary to the debtors' suggestion, the Court sees no need to develop standardized criteria to discern when a series of omissions establishes a sufficient pattern to give rise to fraudulent intent. Chlad Reply 4-6. Rather, the inquiry is best left to "the court that has presided over the presentation of evidence, that has heard all of the witnesses, and that has both the closest and the deepest understanding of the record—*i.e.*, the bankruptcy court." *Village at Lakeside*, 138 S. Ct. at 968. The Court therefore would review the bankruptcy court's fraudulent intent finding for clear error even were it considered to be a mixed question of law and fact.

Consistent with their attempt to characterize the issue of fraudulent intent as a mixed question, the debtors insist that their errors do not form a "pattern" of misstatements sufficient to establish a reckless disregard for the truth. They contend that a pattern cannot consist of "a series

of random events" that have "little in common" with each other and must take into consideration the volume and complexity of sworn statements made during the entire bankruptcy case. Chlad Br. 15; Chlad Reply 5-7. This argument is unavailing as well. There is no legal requirement for purposes of a false oath denial of discharge that misstatements relate to the same or similar subject matter. The Seventh Circuit has found a sufficient pattern of recklessness where the misstatements at issue were far from the type of "ordered" arrangement the debtors insist on. *See Stamat*, 635 F.3d at 979 (finding pattern based on failure to report refinancing of second home, partnership interests, counterclaim, and settlement payment, and error in reporting certain income); *Katsman*, 771 F.3d at 1050 (upholding denial of discharge based on pattern that consisted of debtor's omission of several creditors, property owned jointly with ex-husband, and alimony payments received). Moreover, in neither *Stamat* nor *Katsman* did the Court of Appeals focus on the relatedness of the misstatements; rather, it looked at whether they were "part of a larger picture of omissions and errors." *Stamat*, 635 F.3d at 982. The debtors' concerns about the complexity and volume of misstatements cannot win the day for them either. Although they are valid factors for purposes of determining fraudulent intent, they are just that—factors. The bankruptcy court was free to consider or reject them in analyzing the debtors' mindset, and the debtors offer no authority to the contrary.

That brings the Court to the debtors' last-ditch contention: that no reasonable factfinder could conclude that they were reckless in completing their disclosures. Pointing to a host of factors they believe compel the conclusion that their errors were innocent mistakes, the debtors argue that there is no evidence that they had a motive to deceive the trustee or their creditors.[13] Rather, many

---

[13] Chlad contends that a lack of motive on the debtors' part makes it virtually impossible to conclude that they acted with fraudulent intent. Chlad Reply 8. But this argument conflates the difference between a subjective intent to deceive and reckless indifference to the truth. Although

of the errors arose due to the incompetence of their bankruptcy attorney. Nabhani (who still represents Vehovc in this appeal) testified that his clients fully and accurately disclosed to him that they owned the Van Buren Property, the sources of their income, and Chlad's alias. Nevertheless, he failed to properly transfer this information onto their disclosures. The debtors also testified that they failed to appreciate the need to disclose the rest of the information. They believed that the Edgebrook guarantees were no longer in effect, that the two bank accounts did not need to be disclosed because they were insignificant assets (and because the latter belonged to Lockwood), and that the shareholder loan was merely an accounting function, not an actual credit arrangement. In all events, the debtors continue, the number of errors in their submissions was small compared to the amount of information they needed to disclose, and they promptly provided the trustee with additional information and documents during § 341 meetings.

The factors favoring the debtors in this case are by no means inconsequential. Courts have invoked some of the same considerations in chalking up a debtor's errors to inadvertence rather than intentional or reckless disregard for the truth. Myriad courts have excused omissions where the debtors' counsel failed to incorporate required information that was accurately and completely disclosed to them. *See, e.g.*, *In re Isaacson*, 564 B.R. 380, 385, 388 (Bankr. N.D. Ill. 2017) (finding debtors did not evidence reckless disregard where they "were scrupulous in providing information to each of their attorneys and had no knowledge that their original schedules were not accurate"); *Radloff*, 418 B.R. at 326 ("[T]he Debtor's reliance in fact on counsel to complete the form in a

---

a motive (or the lack thereof) is relevant to the determination of a debtor's intent, it does not play a role in the determination that the bankruptcy judge made here: that the debtors were reckless (which is to say, indifferent) to the truth of the information provided. Moreover, to the extent Chlad suggests that a lack of motive should be a complete defense, her argument must be directed to the Seventh Circuit, which held in *Katsman* that the debtor's motive for making a false oath was "irrelevant" and that only "a reckless indifference to truth . . . is required for fraudulent intent in bankruptcy." 771 F.3d at 1050-51.

way responsive to the statutory requirements bolsters a finding of no knowledge or fraudulent intent on the Debtor's part.") (citations omitted); *In re O'Neill*, 468 B.R. 308, 332-33 (Bankr. N.D. Ill. 2012) (declining to find debtors acted with reckless disregard for truth where they relied in good faith on their attorney to accurately record information). Other courts also have declined to deny a discharge where the debtor reasonably misunderstood the need to disclose certain information. *See, e.g.*, *Kempff*, 847 F.3d at 449-50 (upholding finding that debtor lacked fraudulent intent where mistakes arose from her own misunderstanding and incompetent advice by attorney); *In re Artstein*, 455 B.R. 689, 693 (Bankr. N.D. Ill. 2011) (finding no false oath where debtor failed to disclose ownership interest because he misunderstood nature of interest). Moreover, that a debtor took pains to gather the required information and disclosed omitted information elsewhere in their filings, or at least subsequently during § 341 meetings, has in other cases weighed heavily against a finding of recklessness. *See, e.g.*, *Isaacson*, 564 B.R. at 385 (holding that failure to disclose 401(k) account and stocks was neither knowingly fraudulent nor reckless where debtor took "active steps" to ensure schedules were corrected and disclosed information to creditors in other ways); *Bonomi*, 2014 WL 640982, at *7 (finding no "pattern of concealment" where debtor cooperated fully in subsequent § 341 meetings and by providing trustee with additional information at her request); *In re Bailey*, 147 B.R. 157, 165 (Bankr. N.D. Ill. 1992) (noting that "subsequent disclosures are evidence of innocent intent" in finding debtor's omission of three bank accounts was not fraudulent). Given the abundance of mitigating factors, it would not, perhaps, have been unreasonable for the bankruptcy judge to conclude that the debtors were not indifferent or cavalier about the accuracy of their disclosures.

The problem for the debtors, of course, is that the bankruptcy court concluded that the debtors' conduct, and their explanations for that conduct, evinced indifference to the accuracy of

their post-petition documents and therefore demonstrated fraudulent intent within the meaning of § 727(a)(4). For the reasons discussed above, that ruling is entitled to deference; this Court is not entitled to override it unless left with the definite and firm conviction that the bankruptcy court's decision was a mistake. Put another way, the bankruptcy judge's finding of fraudulent intent must stand unless no reasonable fact finder could come out the same way. *See, e.g.*, *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013) (clear error found where "the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence"); *In re Rovell*, 194 F.3d 867, 872 (7th Cir. 1999) ("If the record supports two permissible conclusions, 'the factfinder's choice between them cannot be clearly erroneous.'") (citation omitted). It is important to note as well that the substantial deference afforded to the bankruptcy court's determination must also be evaluated in the context of the relevant standard of proof, which is the very forgiving preponderance standard. The precise question for this Court to consider is not simply whether the bankruptcy judge's finding of fraudulent intent was clearly erroneous, but whether his finding that Chapman proved by a preponderance of the evidence that the debtors were recklessly indifferent to the accuracy of their disclosures was clearly erroneous. That formula permits a finding about intent to defraud to survive even when there is substantial reason to disagree with that finding.

As another bankruptcy judge in this district aptly remarked in another recent case, "[w]herever that fine and elusive line" between inadvertence and recklessness is drawn, "there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *In re Carney*, 558 B.R. at 260 (Lynch, J.). The bankruptcy judge believed that the debtors crossed that Rubicon and this Court concludes that he had a sufficient basis to support that finding. The omission of Edgebrook as a creditor offers the most problematic

omission for the debtors. Although the debtors contend that they reasonably believed they could omit their guarantees based on the bank's assurances, that belief is not difficult to discredit. The guarantees imposed a substantial obligation on the debtors (totaling $810,000) and were fully documented and legally executed. R. 1256-63. Given the gravity and the formality behind them, as well as the debtors other experience with personal guarantees, R. 1030-31, 1235, it is easy to be skeptical that Chlad and Vehovc thought they were no longer enforceable based on their discussions with Edgebrook. That is especially so considering that, after the petition date, Chlad continued to speak with the bank about finding a third party to take over the underlying loan and the bank informed Nabhani that the debtors' personal liability on the debt "will be released *when* [the] Bankruptcy court approves." R. 612-15, 1274. Furthermore, notably absent is the contention that the debtors' counsel advised them to omit the guarantees. And that is because Nabhani was not even told about the Edgebrook guarantees before he completed the debtors' schedules. R. 1026. Rather, the debtors made their own judgement call in omitting Edgebrook as a creditor. Chlad Br. 21-22; Vehovc Br. 24. And while it is understandable that the two might not appreciate the legal nuisances of credit relationships, their failure "to seek advice of counsel, while knowing that [they] lacked legal training or knowledge," and after already having retained counsel, is indicative of "a reckless indifference to the truth." *Katsman*, 771 F.3d at 1050.

The same could be said about the omission of the bank accounts. The debtors' primary excuse for leaving those items off their schedules is that there was little to nothing in the accounts at the time they filed their disclosures. But as the Seventh Circuit has recognized, this excuse is often "specious." *Stamat*, 635 F.3d at 982-83. Their explanation also ignores one of the many reasons why debtors are required to divulge their accounts in the first place: to give the trustee and creditors insight into how the they have disposed of their property. *Chlad*, 2017 WL 2861104, at

*12. The debtors other excuse for failing to list the Furca Account—that they believed it belonged to Lockwood—rings somewhat hallow as well. Even if the account was used solely for Lockwood purposes, the account was still in Chlad's name. More telling though is that, again, the debtors failed to consult Nabhani about whether to include the account in the petition. *See* R. 1038 (Vol. 4, pg. 28). Rather, the account only surfaced after he instructed Chlad to gather statements for any account that was in her name. R. 966.

The failure to list the Van Buren Property and Chlad's alias also supports the bankruptcy judge's finding of recklessness. The debtors characterize the bankruptcy court's treatment of the Van Buren Property as a Catch-22. As they see it, the court found them reckless in reviewing their filings page by page with Nabhani without catching this error yet would have found them even more reckless had they not reviewed the filings at all. Chlad Reply 15. In other words, the bankruptcy judge's view left "no room for the instances as in this case where Chlad did not notice Nabhani did not transfer the information she gave him—thus knowing the truth, but not the falsity of the statement." *Id.* That's not quite right. What the bankruptcy court found is that the omission of the Van Buren Property was essentially anything but inadvertent. *Chlad*, 2017 WL 2861104, *11, 15. Even if it stopped short of labeling the omission as intentional, it certainly threw cold water on the notion that the debtors simply failed to catch Nabhani's slip up.[14] The record supports this finding. Both debtors were well aware that they owned the property (rather than Lockwood) based on prior research that Vehovc and Chlad's assistant had conducted. R. 797-802. Chlad also met with her assistant and Nabhani several times prior to the petition date and, during several (if

---

[14] The fact that both of the debtors claimed to have overlooked the omission of the Van Buren property also supports the bankruptcy court's skepticism. However unlikely it may have been that one of them overlooked the omission of the property, the prospect that both of them overlooked the omission of the same significant property on their schedules is far less likely.

not all) of those meetings, the three discussed the Van Buren Property in depth. R. 801. On top of that, the Van Buren Property was identified as one of a handful of properties Chlad wished to keep post-bankruptcy. R. 802-07; PX 7, ECF No. 30-8 at 1-2. The debtors argue that it would have been impossible for them to hide the Van Buren Property as Chapman had previously held mortgages on the property and knew the debtors had owned it. Chlad Br. 18. Perhaps, but that the debtors were unlikely to get away with leaving the property off their schedules does not mean that the omission must be deemed unintentional.

Similarly, failing to list Chlad's alias could reasonably be characterized as a glaring omission that cannot be pinned solely on the debtors' counsel. *See In re Hannon*, 839 F.3d 63, 73 (1st Cir. 2016) ("As Hannon himself concedes, reliance on the advice of counsel is no defense when the deficiency should have been evident to the debtor.") (internal quotation marks and citation omitted). Chlad used the name "Monika" regularly in her business and financial affairs in the time leading up to the bankruptcy. *See, e.g.*, R. 1276, 1290. Even her social security card and driver's license were issued in that name. R. 682, 960. So, regardless of whether Chlad disclosed her alias to Nabhani, its omission from the petition likely should have stood out to both her and to Vehovc during their review of that document.

Whether the debtors' other errors were innocent or excusable are, at least in this Court's view, closer calls—but close calls on questions of fact go to the trial judge. Even if this Court were to conclude that the debtors' explanations as to the remaining misstatements and omissions should have been credited, that determination would not affect the Court's decision. That is because the omission of the Van Buren Property, the Edgebrook guarantees, the two bank accounts, and Chlad's alias reasonably support the conclusion that the debtors recklessly disregarded the truth when completing their disclosures. To reiterate, given the number of mitigating factors, those

omissions could reasonably have been attributed to negligence or innocent misunderstandings by the debtors themselves or their attorney—and in that case this Court likely would be making the same points to affirm that ruling against an appeal by Chapman. But the debtors' testimony and explanations, as well as their level of sophistication and business experience, give the Court enough pause to conclude the reckless disregard finding is not clearly erroneous. That is especially so given that the bankruptcy court was in the best position to assess the credibility and demeanor of the debtors. *See Kempff*, 847 F.3d at 449 (stating that "the reviewing court's deference is particularly strong in [the] context" of fraudulent intent determinations); *Williamson*, 828 F.2d at 252 (finding such deference to be "particularly appropriate").

The debtors advance one other argument relating to intent that must be addressed. They complain that the bankruptcy court's false oath findings are the result of the rote application of *per se* rules rather than an analysis of the circumstances surrounding their errors. That is, the debtors argue that they are being denied a discharge based on the mere act of nondisclosure. Chlad Br. 13-14; Vehovc Am. Br. 25-26. The debtors draw their argument from *Bonomi*, 2014 WL 640982, a decision in which Judge Barnes cautioned about the overreliance of *per se* rules in false oath cases. He expressed a particular concern about reading *Stamat* too broadly to impute onto a sophisticated debtor knowledge of every sworn misstatement and to hold every misstatement to be material. *Id.* at *7-8. The result of such a reading (which the plaintiff in that case urged), Judge Barnes concluded, is that "a plaintiff need only demonstrate a mistake—any mistake—by a sophisticated debtor on its schedules or statements, and discharge would be denied." *Id.* at *8. In rejecting a broad reading of *Stamat*, he found that "[t]here must always be some room for the trial court to apply" its discretion in determining whether a denial of discharge is appropriate. *Id.* While the Court shares Judge Barnes' concerns about the dangers of transforming the false oath analysis into

a form of strict liability, this is not an instance where the bankruptcy judge abdicated its discretion or lacked any real evidence to support its findings. Again, while this case presents findings that might reasonably have gone the other way, the debtors' explanations are not so ironclad as to compel the conclusion that they must be granted a discharge as a matter of law. Furthermore, as discussed above, the bankruptcy court weighed the debtors' testimony and explanations, as well as the surrounding circumstances, in concluding that the errors were more than a product of reasonable mistakes.

## III.    Evidentiary Issues

Before closing, Chlad raises three evidentiary issues. She first argues that the bankruptcy court erred in denying the admission of Chlad Exhibit 24, the Trustee's Individual Estate Property Record and Report, which purports to show "that the Trustee did not liquidate any pre-petition asset because all were 100% worthless." Chlad Br. 35 n.8. The Court need not address this argument. Not only is it raised in a footnote, Chlad fails to identify how the bankruptcy court erred in refusing to admit the exhibit, let alone cite legal authority for her position. The argument is therefore waived. *See Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) ("A party may waive an argument by presenting it only in an undeveloped footnote.") (citations omitted); *Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

Chlad's second evidentiary argument is guilty of the same sin. She contends, again in a footnote, that the bankruptcy court erred in excluding "evidence regarding Plaintiffs' motives and the nature of the two-party dispute"—that is, the nature of the dispute between the debtors and Chapman. Chlad Br. 36 n.9. Although she cites case law in support of this argument, she does not

identify the particular testimony or evidence that was improperly excluded or explain how her cited cases advance her argument. It is not this Court's responsibility to sift through the record and construct the parties' arguments for them. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Rather, it is "an advocate's job . . . to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006). Chlad's failure to develop this argument is fatal.

Finally, Chlad argues that the bankruptcy court erred by failing to consider the evidence of domestic abuse she faced (at the hands of a third party) leading up to and during the bankruptcy. Chlad Br. 36-37 & n.10. She goes on to chide the court for being tone deaf to the #metoo movement and concludes that the absence of any discussion about her abuse "is indicative in-and-of-itself of the reversible, flawed reasoning" in the judge's opinion. *Id.* at 36 n.10. This argument is meritless. The probative value of such evidence is minimal at best. While it may show that Chlad was under unusual stress at the time she filed for bankruptcy (in addition to the stress that normally befalls debtors), Chlad never testify that the harassment directly impaired her ability to carefully complete and review her disclosures. R. 736-49. The bankruptcy court thus was free to give this evidence little, or as was the case here, no weight. Accordingly, Chlad has failed to raise any evidentiary issues that warrant a reversal of the bankruptcy court's decision.

\*     \*     \*

Accordingly, for the reasons set forth above, the Court affirms the bankruptcy court's denial of the debtors' discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

Date: August 30, 2018

John J. Tharp, Jr.
United States District Judge